UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION  )<br>)<br>PLAINTIFF  )<br>)<br>v.  )<br>)<br>AQUAPHEX TOTAL WATER  )<br>SOLUTIONS, LLC and  )<br>GREGORY G. JONES  )<br>)<br>DEFENDANTS  ) | Civil Action No.: 4:15-cv-438 |

## COMPLAINT

For its Complaint, the Securities and Exchange Commission ("SEC") alleges as follows:

**I.    Summary**

1.    Defendant Gregory G. Jones violated the federal securities laws in two securities offerings. First, in 2009, Jones represented a group of French and Swiss investors that invested approximately $6 million in an entity called Edwards Exploration, LLC. Jones had an agreement with Edwards Exploration in which it was to pay Jones for performing certain services, including providing due diligence in connection with the French and Swiss investors' investment. Jones ultimately received approximately $480,000 under this agreement. But he did not disclose to the investors that the $480,000 he received came from the investors' principal.

2.    Second, from the summer of 2013 through at least the summer of 2014, Jones offered and sold securities issued by Aquaphex Total Water Solutions, LLC ("Aquaphex")—purportedly in business to recycle fracking water—raising approximately $645,000 from nine investors. Jones and Aquaphex guaranteed some investors that their investment would double in at least five years. They also represented that Aquaphex would use investor funds to build

water-filtration units to treat fracking water. But Aquaphex did not build water-filtration units. And Aquaphex investment documents contained untrue statements, including claims that Aquaphex could be worth $21 billion in five years and that investors stood to make more than 115% per year on their investments.

3.  By committing the acts alleged in this Complaint, the Defendants directly and indirectly engaged in, and unless restrained and enjoined by the Court will continue to engage in, acts, transactions, practices, and courses of business that violate securities-registration and anti-fraud provisions of the federal securities laws, specifically Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77e(a), 77e(c), and 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

4.  The SEC brings this action seeking permanent injunctions disgorgement plus prejudgment interest, and civil penalties, as to each Defendant, conduct-based injunctions as to Jones as specified below, and all other equitable and ancillary relief to which the Court determines the SEC is entitled.

## II.  Jurisdiction and Venue

5.  The Court has jurisdiction over this action under Section 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(d) and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa]. Venue is proper because Defendants reside in, and a substantial part of the events, acts, and omissions giving rise to the claims occurred in, the Northern District of Texas.

## III.  The Parties

6.  Plaintiff SEC is an agency of the United States government charged with

regulating the country's securities industry and prosecuting civil and administrative cases to enforce the country's securities laws.

7. Defendant Jones is a natural person residing in Southlake, Texas. Jones is an attorney, licensed to practice in Texas.

8. Defendant Aquaphex is a limited liability company organized under Texas law, with its headquarters in Southlake, Texas.

## IV. Facts

### The Edwards Exploration Securities Offering

9. In or about 2009, Jones met a group of French investors who were considering the purchase of securities—specifically, fractionalized oil-and-gas working interests—offered by Edwards Exploration. Edwards Exploration was a Texas company that purportedly operated coal-bed-methane leases in Wyoming. The investors retained Jones in or about 2009 to represent them in their purchase of the Edwards Exploration securities.

10. Under a written agreement with the investors signed in July 2010, Jones was to set up Texas companies for each of them, through which they could each invest in other U.S. companies. The investors agreed to pay Jones $20,000 as an initial fee, an additional amount up to $30,000 to fund their Texas company, and additional amount from $5,000 to $10,000 per year after that. The agreement specified that all fees associated with negotiating an investment with Edwards Exploration, including due-diligence fees and fees for dealings directly with Edwards Exploration, would be borne by Edwards Exploration. As written, the agreement did not provide that Edwards Exploration's obligation to pay Jones under the agreement was contingent upon the investors making an investment.

11. The investors subsequently purchased oil-and-gas interests from Edwards

Exploration for approximately $6 million. Unknown to the investors, approximately $480,000 of their investment was deducted by Edwards Exploration to pay Jones.

12.     To fund the investment, the investors paid some installments to Edwards Exploration directly and made multiple deposits into a trust account held by Jones's law firm. As funds came into the account, Jones on some occasions deducted an amount for his attorney fees on instructions from Edwards Exploration and sent the balance to Edwards Exploration. Other times, Jones sent the full deposit to Edwards Exploration, and Edwards Exploration then remitted a payment to Jones in various amounts determined by Edwards Exploration. Jones received no fees from Edwards Exploration in connection with the investment until after the investors made payments to purchase its securities.

13.     At a minimum, Jones was reckless in not knowing that the payment he received for the attorney fees came from the principal investment. Jones did not disclose to the investors the amount he received in fees from Edwards Exploration. And he did not disclose to them that the amount he received came from their principal.

**The Aquaphex Securities Offering**

14.     Jones was Aquaphex's CEO and managing member. He had the ultimate control and authority over Aquaphex's management and over the statements it made to the public and to its securities holders. Aquaphex purported to be in business to provide water-filtration services to recycle water used in oil-and-gas fracking operations.

15.     From at least the summer of 2013 through the summer of 2014, Jones and Aquaphex offered and sold securities issued by Aquaphex in transactions for which no registration statement was filed with the SEC. The Aquaphex securities offering consisted of investment-contract and equity securities that took two forms: (1) "revenue sharing

agreements," representing the right to receive a percentage from Aquaphex's first five water-filtration plants and (2) membership units in Aquaphex. Jones raised at approximately $645,000 from nine investors by selling such securities.

16.     In the securities offering, Jones provided investors documents by email and in person, describing Aquaphex and its securities offering, including an executive summary, a slide presentation, and a revenue-sharing agreement. These documents contained untrue statements and otherwise omitted statements necessary to prevent the documents from being misleading.

17.     The executive summary stated that Aquaphex's principals had invested $2 million. It stated that "friends and family" had invested an additional $350,000. And it stated, "We expect to be acquired by an oil services company within 5 years at a projected value of $21B." These statements were untrue. In reality, Aquaphex had received the vast majority of these investments in the form of so-called "sweat equity" for which no independent valuation existed. And no reasonable basis existed for the $21 billion projected value for Aquaphex. At the time, Aquaphex had no customers, no contracts to provide water-filtration services, and no revenues.

18.     The executive summary further provided that investment proceeds would be used to construct water-filtration units, among other things. In reality, neither Jones nor Aquaphex used the proceeds to construct water-filtration units.

19.     The revenue-sharing agreement contained a projected investment return of 115.3% per year to be derived from the revenues of five water-filtration plants to be built in within five years. It also guaranteed that investors would double their investment within five years even if the water-filtration plants underperformed. These statements were untrue because they had no reasonable basis. Again, Aquaphex had no customers, no contracts to provide water-

filtration services, and no revenues.

## FIRST CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Exchange Act Rule 10b-5

20.     The SEC realleges paragraphs 1 through 19 as if set forth verbatim.

21.     Defendants Jones and Aquaphex directly or indirectly, singly or in concert with others, in connection with the purchase and sale of securities, by use of the means and instrumentalities of interstate commerce or by use of the mails, have (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts and have omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, and courses of business which operated as a fraud and deceit upon purchasers, prospective purchasers, and other persons.

22.     Defendants Jones and Aquaphex at least severely recklessly engaged in the conduct and made the untrue and misleading statements described in this claim.

23.     By reason of the foregoing, Defendants Jones and Aquaphex have violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## SECOND CLAIM FOR RELIEF
### Violations of Securities Act Section 17(a)

24.     The SEC realleges paragraphs 1 through 19 as if set forth verbatim.

25.     By engaging in the engaging in the acts and conduct alleged herein, Defendants Jones and Aquaphex directly or indirectly, singly or in concert with others, in the offer and sale of securities, by use of the means and instruments of transportation and communication in interstate commerce or by use of the mails, have (a) employed devices, schemes, or artifices to

defraud; (b) obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit.

26. Defendants Jones and Aquaphex at least severely recklessly employed the devices, schemes, or artifices to defraud described in this claim.

27. Defendants Jones and Aquaphex at least negligently obtained the money or property described in this claim by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

28. Defendants Jones and Aquaphex at least negligently engaged in the transactions, practices, or courses of business described in this claim which operated or would operate as a fraud or deceit.

29. By reason of the foregoing, Defendants Jones and Aquaphex have violated and, unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### THIRD CLAIM
### Violations of Securities Act Sections 5(a) and 5(c)

30. The SEC realleges paragraphs 1 through 19 as if set forth verbatim.

31. Defendants, directly or indirectly, singly or in concert with others, have offered to sell, sold, and delivered after sale, certain securities and have (a) made use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell securities, through the use of email, interstate carrier, brokerage transactions, or otherwise; (b) carried and caused to be carried through the mails and in interstate commerce by the means and instruments of transportation such securities for the purpose of sale and for delivery after sale;

and (c) made use of the means or instruments of transportation and communication in interstate commerce or of the mails to offer to sell such securities.

32. By reason of the foregoing, Defendants Jones and Aquaphex have violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e (c)].

## **PRAYER FOR RELIEF**

WHEREFORE, the SEC respectfully requests that the Court enter a judgment:

**I.**

Permanently enjoining Defendants Jones and Aquaphex from future violations of Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

**II.**

Ordering Defendants Jones and Aquaphex to disgorge an amount equal to the assets and benefits which they obtained as a result of the violations alleged, plus prejudgment interest on that amount;

**III.**

Imposing civil penalties against Defendants Jones and Aquaphex pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] for violations of the federal securities laws as alleged herein;

**IV.**

Enjoining Jones from directly or indirectly receiving compensation in any form, pecuniary or otherwise, for providing any legal services to any person in connection with the

offer, sale, or purchase of securities pursuant to, or claiming, an exemption from registration under the Securities Act; and

## V.

Imposing such other and further relief as the SEC may show itself entitled.

Dated:  June 10, 2015

Respectfully submitted,

s/Timothy S. McCole
TIMOTHY S. McCOLE
Mississippi Bar No. 10628
James E. Etri
Texas Bar 24002061
United States Securities and
Exchange Commission
Fort Worth Regional Office
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
(817) 978-6453 (tm)
(817) 978-4927 (facsimile)
McColeT@SEC.gov