UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION </br></br> PLAINTIFF </br></br> v. </br></br> AQUAPHEX TOTAL WATER SOLUTIONS, LLC and GREGORY G. JONES </br></br> DEFENDANTS | Civil Action No.: |

**CONSENT OF DEFENDANTS
AQUAPHEX TOTAL WATER SOLUTIONS, LLC
AND GREGORY G. JONES**

1. Defendants Aquaphex Total Water Solutions, LLC and Gregory G. Jones ("Defendants") waive service of a summons and the complaint in this action, enter a general appearance, and admit the Court's jurisdiction over Defendants and over the subject matter of this action.

2. Defendants hereby admit to the facts contained in Annex A, attached hereto, and consent to the entry of the final judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

> (a) permanently restrains and enjoins Defendants from violation of Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and

1

    (b) permanently restrains and enjoins Jones from directly or indirectly receiving compensation in any form, pecuniary or otherwise, for providing any legal services to any person in connection with the offer, sale, or purchase of securities pursuant to, or claiming, an exemption from registration under the Securities Act

3.    Defendants agree that, upon motion of the Commission, the Court shall determine whether it is appropriate to order disgorgement of ill-gotten gains and/or a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and, if so, the amount(s) of the disgorgement and/or civil penalty. The Defendants further understand that, if disgorgement is ordered, Defendants shall pay prejudgment interest thereon, calculated from September 1, 2014, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2). Defendants further agree that in connection with the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that Defendants did not violate the federal securities laws as alleged in the Complaint; (b) Defendants may not challenge the validity of this Consent or the Final Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In connection with the Commission's motion for disgorgement and/or civil penalties, the parties may take discovery, including discovery from appropriate non-parties.

4. Defendants waive the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

5. Defendants waive the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

6. Defendants enter into this Consent voluntarily and represent that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendants to enter into this Consent.

7. Defendants agree that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

8. Defendants will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

9. Defendants waive service of the Final Judgment and agree that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendants of its terms and conditions. Defendants further agree to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendants have received and read a copy of the Final Judgment.

10. Consistent with 17 C.F.R. 202.5(f), this Consent resolves only the claims asserted against Defendants in this civil proceeding. Defendants acknowledge that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability.

Defendants waive any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendants further acknowledge that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendants understands that Defendants shall not be permitted to contest the factual allegations of the complaint in this action.

11. Defendants understand and agree to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." As part of Defendants' agreement to comply with the terms of Section 202.5(e), Defendants: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Defendants do not admit the allegations of the complaint, or that this Consent contains no admission of the allegations; (iii) upon the filing of this Consent, Defendants hereby withdraw any papers filed in this action to the extent that they deny any allegation in the complaint; and (iv) stipulate for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. §523, that the

allegations in the complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil penalty, or other amounts due by Defendant under the Final Judgment or any other judgment, order, consent order, decree, or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendants of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19). If Defendants breach this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendants': (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

12. Defendants hereby waive any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendants to defend against this action. For these purposes, Defendants agree that Defendants are not the prevailing parties in this action since the parties have reached a good faith settlement.

13. Defendants agree that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

14. Defendants agree that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated: 6/10/15

_____
Gregory G. Jones

Aquaphex Total Water Solutions, LLC

By: _____
Gregory G. Jones, Managing Member

On June 10th, 2015, Gregory G. Jones, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent personally and with full authority to do so on behalf of Aquaphex Total Water Solutions, LLC as its Managing Member.

_____
Notary Public
Commission expires: 09-16-2015

MARYANN ROMANELLI
Notary Public, State of Texas
My Commission Expires
September 16, 2015

**UNITED STATES DISTRICT COURT**
for the
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION** ) ) ) | |
| PLAINTIFF ) ) | |
| v. ) ) | Civil Action No.: |
| **AQUAPHEX TOTAL WATER SOLUTIONS, LLC and GREGORY G. JONES** ) ) ) ) | |
| DEFENDANTS ) | |

**ANNEX A
TO CONSENT OF DEFENDANTS
AQUAPHEX TOTAL WATER SOLUTIONS, LLC
AND GREGORY G. JONES**

Defendants Aquaphex Total Water Solutions, LLC ("Aquaphex") and Gregory G. Jones admit the facts set forth below and acknowledge that their conduct violated the federal securities laws.

**Facts**

**The Edwards Exploration Securities Offering**

1. In or about 2009, Jones met a group of French investors who were considering the purchase of securities—specifically, fractionalized oil-and-gas working interests—offered by Edwards Exploration. Edwards Exploration was a Texas company that purportedly operated coal-bed-methane leases in Wyoming. The investors retained Jones in or about 2009 to represent them in their purchase of the Edwards Exploration securities.

2. Under a written agreement with the investors signed in July 2010, Jones was to set up Texas companies for each of them, through which they could each invest in other U.S.

companies. The investors agreed to pay Jones $20,000 as an initial fee, an additional amount up to $30,000 to fund their Texas company, and additional amount from $5,000 to $10,000 per year after that. The agreement specified that all fees associated with negotiating an investment with Edwards Exploration, including due-diligence fees and fees for dealings directly with Edwards Exploration, would be borne by Edwards Exploration. As written, the agreement did not provide that Edwards Exploration's obligation to pay Jones under the agreement was contingent upon the investors making an investment.

3.    The investors subsequently purchased oil-and-gas interests from Edwards Exploration for approximately $6 million. Unknown to the investors, approximately $480,000 of their investment was deducted by Edwards Exploration to pay Jones.

4.    To fund the investment, the investors paid some installments to Edwards Exploration directly and made multiple deposits into a trust account held by Jones's law firm. As funds came into the account, Jones on some occasions deducted an amount for his attorney fees on instructions from Edwards Exploration and sent the balance to Edwards Exploration. Other times, Jones sent the full deposit to Edwards Exploration, and Edwards Exploration then remitted a payment to Jones in various amounts determined by Edwards Exploration. Jones received no fees from Edwards Exploration in connection with the investment until after the investors made payments to purchase its securities.

5.    At a minimum, Jones was reckless in not knowing that the payment he received for the attorney fees came from the principal investment. Jones did not disclose to the investors the amount he received in fees from Edwards Exploration. And he did not disclose to them that the amount he received came from their principal.

**The Aquaphex Securities Offering**

6. Jones was Aquaphex's CEO and managing member. He had the ultimate control and authority over Aquaphex's management and over the statements it made to the public and to its securities holders. Aquaphex purported to be in business to provide water-filtration services to recycle water used in oil-and-gas fracking operations.

7. From at least the summer of 2013 through the summer of 2014, Jones and Aquaphex offered and sold securities issued by Aquaphex in transactions for which no registration statement was filed with the SEC. The Aquaphex securities offering consisted of investment-contract and equity securities that took two forms: (1) "revenue sharing agreements," representing the right to receive a percentage from Aquaphex's first five water-filtration plants and (2) membership units in Aquaphex. Jones raised at approximately $645,000 from nine investors by selling such securities.

8. In the securities offering, Jones provided investors documents by email and in person, describing Aquaphex and its securities offering, including an executive summary, a slide presentation, and a revenue-sharing agreement. These documents contained untrue statements and otherwise omitted statements necessary to prevent the documents from being misleading.

9. The executive summary stated that Aquaphex's principals had invested $2 million. It stated that "friends and family" had invested an additional $350,000. And it stated, "We expect to be acquired by an oil services company within 5 years at a projected value of $21B." These statements were untrue. In reality, Aquaphex had received the vast majority of these investments in the form of so-called "sweat equity" for which no independent valuation existed. And no reasonable basis existed for the $21 billion projected value for Aquaphex. At the time, Aquaphex had no customers, no contracts to provide water-filtration services, and no

revenues.

10. The executive summary further provided that investment proceeds would be used to construct water-filtration units, among other things. In reality, neither Jones nor Aquaphex used the proceeds to construct water-filtration units.

11. The revenue-sharing agreement contained a projected investment return of 115.3% per year to be derived from the revenues of five water-filtration plants to be built in within five years. It also guaranteed that investors would double their investment within five years even if the water-filtration plants underperformed. These statements were untrue because they had no reasonable basis. Again, Aquaphex had no customers, no contracts to provide water-filtration services, and no revenues.