IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB 17 2016

CLERK, U.S. DISTRICT COURT
By _____
Deputy

SECURITIES AND EXCHANGE           §
COMMISSION,                       §
                                  §
          Plaintiff,              §
                                  §
VS.                               §    NO. 4:15-CV-438-A
                                  §
GREGORY G. JONES,                 §
                                  §
          Defendant.              §

MEMORANDUM OPINION
and
ORDER

The court has before it for consideration and decision the
motion filed by plaintiff, Securities and Exchange Commission,
("SEC") on January 6, 2016, for summary judgment.  After having
considered such motion and its supporting evidence, the response
thereto of defendant, Gregory G. Jones ("Jones"), and his
supporting evidence, SEC's reply, the entire record of the above-
captioned action, and pertinent legal authorities, the court has
concluded that by reason of the Consent documents signed by Jones
all allegations of SEC's complaint are deemed to be established
as a matter of law, that SEC's motion for summary judgment should
be granted to that extent, and that the court will consider
further the feature of the motion for summary judgment that calls
upon the court to define the amount, if any, to award against
Jones by way of judgment disgorgement, prejudgment interest, and
civil penalties.

I.

## Pleadings of the Parties and History of the Litigation

A.  SEC's Complaint

SEC instituted this action on June 10, 2015, by the filing of its complaint naming Jones and Aquaphex Total Water Solutions, LLC ("Aquaphex") as defendants.[1]

At the beginning of its complaint, SEC summarized its allegations as follows:

> 1.  Defendant Gregory G. Jones violated the federal securities laws in two securities offerings. First, in 2009, Jones represented a group of French and Swiss investors that invested approximately $6 million in an entity called Edwards Exploration, LLC.  Jones had an agreement with Edwards Exploration in which it was to pay Jones for performing certain services, including providing due diligence in connection with the French and Swiss investors' investment.  Jones ultimately received approximately $480,000 under this agreement.  But he did not disclose to the investors that the $480,000 he received came from the investors' principal.

> 2.  Second, from the summer of 2013 through at least the summer of 2014, Jones offered and sold securities issued by Aquaphex Total Water Solutions, LLC ("Aquaphex")— purportedly in business to recycle fracking water—raising approximately $645,000 from nine investors.  Jones and Aquaphex guaranteed some investors that their investment would double in at

---

[1]As the general rules of practice of the Northern District of Texas contemplate, SEC's complaint was filed electronically.  SEC was obligated by a standing order that was issued in this action on June 11, 2015 (Doc. 5) to file a paper version bearing the original signature of SEC's counsel within three business days after receipt of the order.  After a misstep in attempting to comply with the standing order, on June 15, 2015, SEC filed a signed paper version of its complaint, which, according to the clerk's practices at the time, was shown to have been received and filed on June 10, 2015, the date when the action was initiated.

2

least five years.  They also represented that Aquaphex
would use investor funds to build water-filtration
units to treat fracking water.  But Aquaphex did not
build water-filtration units. And Aquaphex investment
documents contained untrue statements, including
claims that Aquaphex could be worth $21 billion in
five years and that investors stood to make more than
115% per year on their investments.

3.   By committing the acts alleged in this
Complaint, the Defendants directly and indirectly
engaged in . . . acts, transactions, practices, and
courses of business that violate securities-
registration and anti-fraud provisions of the federal
securities laws, specifically Sections 5(a), 5(c), and
17(a) of the Securities Act of 1933 ("Securities Act")
[15 U.S.C. § 77e(a), 77e(c), and 77q(a)] and Section
10(b) of the Securities Exchange Act of 1934
("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5
thereunder [17 C.F.R. § 240.10b-5].

4.   The SEC brings this action seeking permanent
injunctions disgorgement plus prejudgment interest, and
civil penalties, as to each Defendant, conduct-based
injunctions as to Jones as specified below, and all
other equitable and ancillary relief to which the Court
determines the SEC is entitled.

Doc. 1 at 1-2, ¶¶ 1-4.[2]

In the "Facts" section of the complaint, SEC elaborated on

facts pertinent to each of what it refers to as the two

securities offerings in which Jones was involved, alleging the

following:

### The Edwards Exploration Securities Offering

9.   In or about 2009, Jones met a group of
French investors who were considering the purchase of

---

[2]Unless otherwise indicated, the "Doc. ___" references are to the numbers assigned to the
referenced items on the docket in this Case No. 4:15-CV-438-A.

securities—specifically, fractionalized oil-and-gas working interests—offered by Edwards Exploration. Edwards Exploration was a Texas company that purportedly operated coal-bed-methane leases in Wyoming.  The investors retained Jones in or about 2009 to represent them in their purchase of the Edwards Exploration securities.

10.   Under a written agreement with the investors signed in July 2010, Jones was to set up Texas companies for each of them, through which they could each invest in other U.S. companies.  The investors agreed to pay Jones $20,000 as an initial fee, an additional amount up to $30,000 to fund their Texas company, and additional amount from $5,000 to $10,000 per year after that.  The agreement specified that all fees associated with negotiating an investment with Edwards Exploration, including due-diligence fees and fees for dealings directly with Edwards Exploration, would be borne by Edwards Exploration.  As written, the agreement did not provide that Edwards Exploration's obligation to pay Jones under the agreement was contingent upon the investors making an investment.

11.   The investors subsequently purchased oil-and-gas interests from Edwards Exploration for approximately $6 million.  Unknown to the investors, approximately $480,000 of their investment was deducted by Edwards Exploration to pay Jones.

12.   To fund the investment, the investors paid some installments to Edwards Exploration directly and made multiple deposits into a trust account held by Jones's law firm. As funds came into the account, Jones on some occasions deducted an amount for his attorney fees on instructions from Edwards Exploration and sent the balance to Edwards Exploration. Other times, Jones sent the full deposit to Edwards Exploration, and Edwards Exploration then remitted a payment to Jones in various amounts determined by Edwards Exploration. Jones received no fees from Edwards Exploration in connection with the investment until after the investors made payments to purchase its securities.

13.   At a minimum, Jones was reckless in not knowing that the payment he received for the attorney fees came from the principal investment.  Jones did not disclose to the investors the amount he received in fees from Edwards Exploration.  And he did not disclose to them that the amount he received came from their principal.

**The Aquaphex Securities Offering**

14.   Jones was Aquaphex's CEO and managing member.  He had the ultimate control and authority over Aquaphex's management and over the statements it made to the public and to its securities holders. Aquaphex purported to be in business to provide water-filtration services to recycle water used in oil-and-gas fracking operations.

15.   From at least the summer of 2013 through the summer of 2014, Jones and Aquaphex offered and sold securities issued by Aquaphex in transactions for which no registration statement was filed with the SEC.  The Aquaphex securities offering consisted of investment-contract and equity securities that took two forms:  (1) "revenue sharing agreements," representing the right to receive a percentage from Aquaphex's first five water-filtration plants and (2) membership units in Aquaphex.  Jones raised at approximately $645,000 from nine investors by selling such securities.

16.   In the securities offering, Jones provided investors documents by email and in person, describing Aquaphex and its securities offering, including an executive summary, a slide presentation, and a revenue-sharing agreement.  These documents contained untrue statements and otherwise omitted statements necessary to prevent the documents from being misleading.

17.   The executive summary stated that Aquaphex's principals had invested $2 million.  It stated that "friends and family" had invested an additional $350,000.  And it stated, "We expect to be acquired by an oil services company within 5 years

at a projected value of $21B." These statements were untrue. In reality, Aquaphex had received the vast majority of these investments in the form of so-called "sweat equity" for which no independent valuation existed. And no reasonable basis existed for the $21 billion projected value for Aquaphex. At the time, Aquaphex had no customers, no contracts to provide water-filtration services, and no revenues.

18. The executive summary further provided that investment proceeds would be used to construct water-filtration units, among other things. In reality, neither Jones nor Aquaphex used the proceeds to construct water-filtration units.

19. The revenue-sharing agreement contained a projected investment return of 115.3% per year to be derived from the revenues of five water-filtration plants to be built in within five years. It also guaranteed that investors would double their investment within five years even if the water-filtration plants underperformed. These statements were untrue because they had no reasonable basis. Again, Aquaphex had no customers, no contracts to provide water-filtration services, and no revenues.

Id. at 3-6, ¶¶ 9-19.

Following the factual allegations set forth above, SEC alleged three claims for relief, the first based on alleged violations of section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act")(15 U.S.C. § 78j(2)) and Rule 10b-5 (17 C.F.R. § 240.10b-5), the second based on alleged violations of section 17(a) of the Securities Act of 1933 ("Securities Act") (15 U.S.C. § 77q(a)), and the third based on alleged violations of sections 5(a) and 5(c) of the Securities Act (15 U.S.C. §§ 77e(a) and 77e(c)). In each claim for relief,

6

the summarization and allegations of facts set forth verbatim above were incorporated by reference.

In the first claim for relief, SEC added that defendants "at least severely recklessly engaged in the conduct and made the untrue and misleading statements described in this claim," Doc. 1 at 6, ¶ 22; and, in the second, SEC added that defendants "at least severely recklessly employed the devices, schemes, or artifices to defraud described in this claim," "at least negligently obtained the money or property described in this claim by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading," and "at least negligently engaged in the transactions, practices, or courses of business described in this claim which operated or would operate as a fraud or deceit." Id. at 7, ¶¶ 26-28. Otherwise, the allegations of the first, second, and third claims are but recitations of the elements of the respective statutory violations.

As relief, SEC prayed for disgorgement by defendants in an amount equal to the assets and benefits they obtained as a result of their violations, and civil penalties against

defendants pursuant to statutory provisions.  <u>Id.</u> at 8-9,

¶¶ I-IV.

B.    <u>Activity in the Litigation Before Jones Filed His Answer to the Complaint</u>

    1.    <u>Consent Document Signed by Jones</u>

    Contemporaneously with the filing of its complaint on

June 10, 2015, SEC filed a document titled "Unopposed Motion

to Enter Final Judgment as to Defendants Aquaphex Total Water

Solutions, LLC and Gregory G. Jones," Doc. 3, by which SEC

informed the court of settlement negotiations it had with

defendants before this action was filed that yielded an

agreement that, when given effect by entry of a proposed final

judgment, would resolve SEC's claims against defendants for

injunctive relief.[3]  <u>Id.</u> at 2.  SEC added that, pursuant to the

agreement SEC's claims as to disgorgement, prejudgment

interest, and civil penalties would be resolved by the court

without trial upon a future motion by SEC.  <u>Id.</u>  SEC requested

that "[t]o give effect to the parties' agreement, the

Commission respectfully moves the Court to enter the final

judgment as to Defendants filed herewith."  <u>Id.</u>

---

[3]SEC's unopposed motion went through the same steps the complaint went through (<u>supra</u> at 2 n. 1) before an acceptable signed copy was filed by SEC on June 15, 2015.  As with the complaint, the signed version filed on June 15, 2015, was given a June 10, 2015 file mark and receipt date.

Attached to SEC's motion was a document titled "Consent of Defendants Aquaphex Total Water Solutions, LLC and Gregory G. Jones," which, in turn, had attached a document titled "Annex A to Consent of Defendants Aquaphex Total Water Solutions, LLC and Gregory G. Jones" and a proposed "Final Judgment of Permanent Injunction as to Defendants Aquaphex Total Water Solutions, LLC and Gregory G. Jones." The Consent, which was signed by Jones individually and as managing member of Aquaphex, contained an agreement by Jones and Aquaphex that upon motion of SEC the court "shall determine whether it is appropriate to order disgorgement of ill-gotten gains and/or a civil penalty pursuant to [statutory provisions] and, if so, the amount(s) of the disgorgement and/or civil penalty." Doc. 3-1 at 2, ¶ 3. The Consent (a) went on to contain agreement by Jones and Aquaphex that, in effect, precluded them from arguing that they did not violate federal securities laws as alleged in SEC's complaint and from challenging the validity of the Consent and proposed final judgment, and (b) recited the agreement of defendants that if SEC made a motion to the court as contemplated by the Consent, the allegations of the complaint will be accepted as true by the court for the purposes of SEC's motion. The Annex A attached to the Consent constituted an admission by Jones and

9

Aquaphex of the accuracy of the facts alleged in the complaint, as set forth on pages 3-6 of this memorandum order.

   2.   Events That Led to the Final Judgment of Permanent
        Injunction

   On June 15, 2015, the court conducted a telephone conference/hearing relative to the documents filed by SEC on June 10, 2015, that are described in the immediately preceding subsection 1. SEC was represented by its attorney of record, and Jones participated on his own behalf and as attorney for Aquaphex.[4]  The court made known to the parties that it did not find acceptable, and would not sign, the proposed final judgment of permanent injunction that SEC had included as a part of the motion papers submitted by SEC to the court for consideration on June 10, 2015, and provided the parties an indication of the changes that would have to be made before the court would be willing to sign a final judgment for injunction.  On June 17, 2015, the court issued an order denying SEC's motion for final judgment without prejudice. Doc. 9.

---

   [4]On June 15, 2010, Jones was a member of the State Bar of Texas, the Bar of this court, and the Bar of the Fifth Circuit. Doc. 85 at App. 388-391 & 444-453; N. Dist. of Tex. Case No. 3:16-MC-005-P, Doc. 1. He was replaced by another attorney in this action after he lost his law license to practice in Texas courts. Doc. 85 at App. 388-390. Since then he has been removed from the roll of attorneys admitted to practice before the Fifth Circuit and is the subject of a reciprocal disciplinary action pending before this court. Case No. 3:16-MC-005-P.

The court conducted another telephone conference on
June 17, 2015, concerning the form of a final judgment of
permanent injunction the court would be willing to sign.  On
June 25, 2015, SEC filed an unopposed motion to enter final
judgment of permanent injunction as to both defendants, to
which it attached a proposed final judgment of permanent
injunction.  Doc. 10.  On June 25, 2015, the court signed and
caused to be entered the proposed judgment the parties had
presented to the court earlier that day after deleting, by
marking through, a non-substantive paragraph concerning the
court retaining jurisdiction for the purpose of enforcing the
terms of the judgment.  Doc. 11.  The judgment bore the
written acceptance and approval of the parties "as to both
form and substance."  Id. at 6.

    3.  Further Activity Re the Consent Documents

On August 18, 2015, SEC filed a document titled
"Plaintiff's Motion for Final Judgment as to Disgorgement and
Civil Penalties Against Aquaphex Total Water Solutions, LLC
and Gregory G. Jones" by which it, in reliance on the Consent
papers SEC had included in the documents it filed in this
action on June 10, 2015, proposed entry of a final judgment by
the court as to disgorgement and civil penalties against Jones
and Aquaphex without the benefit of a trial.  Doc. 13.  On

September 21, 2015, the court issued an order denying the

SEC's August 18, 2015 motion without prejudice.  Doc. 23.

On September 21, 2015, both defendants filed a motion to

set aside the settlement agreement evidenced by the documents

SEC filed June 10, 2015, including the Consent of Jones

mentioned above, and to dissolve the final judgment for

permanent injunction the court had issued on June 25, 2015.

Doc. 18.  By order issued September 21, 2015, the court denied

the motion as to the settlement agreement inasmuch as the

court had never approved such an agreement.  Doc. 20.  The

court entered an order on September 25, 2015, denying the

motion to the extent that it sought to set aside the June 25,

2015 final judgment of permanent injunction as to Aquaphex and

Jones.  Doc. 30.

4.   Dismissal of Claims Against Aquaphex

On September 21, 2015, the court issued an order and

final judgment dismissing SEC's claims against Aquaphex in

this action, except to the extent SEC's claims against

Aquaphex had not previously been resolved by the June 25, 2015

final judgment granting permanent injunction, mentioned above.

Docs. 21 & 22.  The dismissal was ordered because of the

failure of SEC to comply with an August 11, 2015 order

directing it by August 25, 2015, to either file proof of

12

proper service of summons on Aquaphex or an instrument
containing a satisfactory explanation, in affidavit form, as
to why such proof could not be filed.

     5.   <u>Jones's Motion to Dismiss</u>

     On September 22, 2015, Jones filed a motion to dismiss
all SEC's claims against him on the grounds that SEC failed to
allege any claim against him upon which relief may be granted
and failed to comply with the pleading standards of Rule 9(b)
of the Federal Rules of Civil Procedure.  Doc. 27.  SEC filed
a response, Doc. 37, to which Jones replied, Doc. 40.  On the
date of the signing of this memorandum opinion and order, the
court is issuing an order denying the motion to dismiss.

C.   <u>Jones's Answer</u>

     In an order issued October 28, 2015, the court directed
Jones to file and serve a pleading responsive to SEC's
complaint within fourteen days.  Doc. 42 at 14.  On
November 12, 2015, Jones filed his answer to SEC's complaint,
by which he denied SEC's allegations of wrongdoing on his
part.  Doc. 46 at 1-3.  By way of affirmative defenses, Jones
pleaded, in addition to reasserting his contention that SEC
failed to assert a claim upon which relief may be granted, as

to activities concerning Edwards Exploration, LLC, the

following:

Defendant is not liable to plaintiff because:

a.   the statute of limitations bars plaintiff's
     claim related to Edwards Exploration, LLC.   If
     any claims exist related to Edwards
     Exploration, LLC they accrued in 2009, this
     case was filed in June 2015, more than 5 years
     after any alleged claim accrued.

b.   The alleged investment with Edwards
     Exploration, LLC, by the "French and Swiss
     investors" was not an investment contract or a
     security.   Edwards Exploration, LLC's
     relationship with the "French and Swiss
     investors" was a joint venture.   The "French
     and Swiss investors" agreed that they did not
     and would not rely on the managerial experience
     of Edwards Exploration, LLC, for the success of
     the venture and that they had the experience
     and knowledge to enable them to effectively
     exercise the managerial powers and authority
     conferred upon them by the Joint Venture
     Agreement related to Edwards Exploration, LLC
     and its entities.   The application of the
     Securities and Exchange Commission's
     jurisdiction related to Edwards Exploration,
     LLC, and the activities by the defendant are
     not valid and the SEC does not have
     jurisdiction over this matter.   The SEC falsely
     describes the issues in the factual statements
     in paragraphs 9-13.

Id. at 3-5.

D.   <u>SEC's Motion for Summary Judgment</u>

The grounds of SEC's January 6, 2016 motion for summary judgment are as follows:

(1)   First, by reason of the June 10, 2015 Consent documents, Jones is precluded from arguing that he did not violate federal securities laws as alleged in SEC's complaint, and the allegations of the complaint are to be accepted by the court as accurate for the purposes of SEC's motion.   SEC contends that, not only do the Consent documents require a summary determination against Jones as to all facts that establish his legal liability for disgorgement, prejudgment interest, and civil penalties, but they also requires that the dollar amounts of those items be resolved by the court without trial.   Doc. 84 at 3-5, 13-14, 15-16; Doc. 109 at 7-8.

(2)   Second, the summary judgment record establishes independently of the Consent documents facts authorizing the court (a) to find the existence of the facts that are alleged by SEC in its complaint, (b) to impose liability on Jones under the securities laws as alleged in the complaint, and (c) to order disgorgement, prejudgment interest, and civil penalties as SEC has requested.   Doc. 84 at 5-11, 16; Doc. 109 at 1-3, 5-7.

E.   <u>Jones's Response to SEC's Motion for Summary Judgment</u>

Some of the arguments made by Jones in his response are in support of contentions that previously have been considered and rejected by the court, such as his contentions that (1) the court should dismiss the case for want of prosecution due to the lack of a complaint on file,[5] Doc. 94 at 6-7, and (2) the complaint should be dismissed for the reasons given by Jones in his previously filed motion to dismiss[6], <u>id.</u> at 7.

In addition, Jones argues that the Consent documents are invalid and unenforceable against Jones because of lack of consideration, <u>id.</u> at 7-9, and he disagrees with SEC's recitation of facts established by the summary judgment record, <u>id.</u> at 9-14.

II.

<u>Analysis</u>

A.   <u>Pertinent Summary Judgment Principles</u>

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[5]Jones's contention that the case should be dismissed for want of prosecution for lack of a complaint was pointedly dealt with and rejected by an order issued January 28, 2016. Doc. 100.

[6]The previously filed motion to dismiss was considered by the court and rejected by an order issued on the date of the signing of this memorandum opinion and order.

matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 247 (1986).  The movant bears the
initial burden of pointing out to the court that there is no
genuine dispute as to any material fact.  Celotex Corp. v.
Catrett, 477 U.S. 317, 323, 325 (1986).  The movant can
discharge this burden by pointing out the absence of evidence
supporting one or more essential elements of the nonmoving
party's claim, "since a complete failure of proof concerning
an essential element of the nonmoving party's case necessarily
renders all other facts immaterial."  Id. at 323.

Once the movant has carried its burden under Rule 56(a),
the nonmoving party must identify evidence in the record that
creates a genuine dispute as to each of the challenged
elements of its case.  Id. at 324; see also Fed. R. Civ. P.
56(c) ("A party asserting that a fact . . . is genuinely
disputed must support the assertion by . . . citing to
particular parts of materials in the record . . . .").  If the
evidence identified could not lead a rational trier of fact to
find in favor of the nonmoving party as to each essential
element of the nonmoving party's case, there is no genuine
dispute for trial and summary judgment is appropriate.
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 587, 597 (1986).   In <u>Mississippi Prot. & Advocacy Sys. v.</u>

<u>Cotten</u>, the Fifth Circuit explained:

> Where the record, including affidavits,
> interrogatories, admissions, and depositions could
> not, as a whole, lead a rational trier of fact to
> find for the nonmoving party, there is no issue for
> trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment

is the same as the standard for rendering judgment as a matter

of law.[7]  <u>Celotex Corp.</u>, 477 U.S. at 323.   If the record taken

as a whole could not lead a rational trier of fact to find for

the nonmoving party, there is no genuine issue for trial.

<u>Matsushita</u>, 475 U.S. at 597; <u>see also</u> <u>Mississippi Prot. &</u>

<u>Advocacy Sys.</u>, 929 F.2d at 1058.

B.   <u>The Accuracy of the Allegations of the Complaint Are</u>
     <u>Established by the Consent Documents</u>

Up until now, the court has rebuffed SEC's attempts to

enforce the Consent documents against Jones because SEC had

never presented its request for enforcement in an appropriate

procedural context.   The court is satisfied that SEC's summary

judgment motion creates a proper context, and that now the

record as a whole, including the summary judgment evidence,

---

[7]In <u>Boeing Co. v. Shipman</u>, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

establishes the validity and enforceability as against Jones
of the Consent documents.

Jones admitted in his deposition testimony that the
signature on the Consent documents is his. Doc. 85 at App.
119 (Dep. 183-84). So far as the court can determine, he gave
no deposition testimony that would put into doubt the validity
and enforceability against him of the Consent documents. The
court does not consider that any of the summary judgment
evidence adduced by Jones raises a genuine issue of fact as to
the validity and enforceability against Jones of the Consent
documents.

On page 1 of the document titled "Consent of Defendants
Aquaphex Total Water Solutions, LLC and Gregory G. Jones,"
Jones "hereby admit[s] to the facts contained in Annex A,
attached hereto . . . ." Doc. 85 at App. 428. In the
attached Annex A, Jones admitted all of the dispositive facts
that are alleged in SEC's complaint, and acknowledged that his
conduct violated the federal securities laws. Id. at App.
434-437. On page 2 of the Consent document, Jones agreed that
for the purposes of a motion by SEC for disgorgement and/or
civil penalties, Jones would be precluded from arguing that he
did not violate the federal securities laws as alleged in the
complaint, that he will not challenge the validity of his

Consent, and that for the purposes of the motion, the allegations of SEC's complaint shall be accepted as and deemed true by the court.  Id. at App. 429.

While the court finds persuasive SEC's argument that there is evidence in the record independently of the Consent documents of facts authorizing the court to impose liability on Jones under the securities laws as alleged in the complaint, and to order disgorgement, prejudgment interest, and civil penalties as SEC has requested, the court does not need to resolve that ground of SEC's motion considering the rulings the court is making herein.

The court is not persuaded by Jones's responsive argument that the Consent documents are invalid and unenforceable against Jones because of lack of consideration.  Consents of the type made by Jones have as consideration the elimination of the need for further, expensive litigation.  See Strouse v. J. Kinson Cook, Inc., 634 F.2d 883, 885 (5th Cir. 1981). Additional consideration is not required.  Much less does an admission by a party for use in a judicial proceeding require additional consideration.  Thus, the court is giving effect to the Consent documents.  Therefore,

The court ORDERS, ADJUDGES, and DECLARES that:

(1)   The allegations in SEC's complaint are accepted by the court as accurate in determining the liability of Jones for disgorgement, prejudgment interest, and civil penalties, as requested by SEC in its complaint;

(2)   Jones violated the securities laws of the United States (specifically Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. § 77e(a), 77e(c), and 77q(a), respectively] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]) in each of the respects alleged by SEC in its complaint; and

(3)   Jones is subject to disgorgement, prejudgment interest, and civil penalties by reason of such violations.

To the extent set forth immediately above, the court has granted SEC's motion for summary judgment.   The court still has under consideration the portion of the motion for summary judgment requesting the court to define the amount, if any, to impose against Jones as disgorgement, prejudgment interest, and civil penalties.   The court is considering those matters further, and might well order that the parties,

through counsel, appear before the court to be heard by way of argument on those remaining matters.

    SIGNED February 17, 2016.

                                                  JOHN MCBRYDE
                                                 United States District Judge